**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **LUKE & ELLE LLC** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No.  6:25-cv-523** |
| | § | |
| **STATE FARM LLOYDS** | § | **JURY TRIAL DEMANDED** |
| *Defendant.* | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

In compliance with Dkt. No. 5, Plaintiff Luke & Elle LLC ("Plaintiff" and/or "Luke") files this Second Amended Complaint against Defendant State Farm Lloyds ("Defendant" and/or "State Farm"), and would respectfully show as follows:

**I.
PARTIES AND PROCESS SERVICE**

1.     Plaintiff is a Texas limited liability company in good standing with all its members being citizens of Texas.  Accordingly, for purposes of diversity jurisdiction, Plaintiff is a citizen of Texas.

2.     Defendant State Farm Lloyds is a Texas Lloyd's insurance exchange authorized to transact the business of insurance in the State of Texas. State Farm Lloyds regularly conducts insurance business in a systematic and continuous manner in Texas. For purposes of diversity jurisdiction, State Farm Lloyds is a citizen of Illinois and Arizona.  State Farm Lloyds is a "Lloyds Plan" organized under Chapter 941 of the Texas Insurance Code.  It consists of an unincorporated association of underwriters who were at the time this action was commenced, and still are, all citizens and residents of Illinois and Arizona, thereby making State Farm Lloyds a citizen of Illinois and Arizona for diversity purposes. Defendant has agreed to accept service of this Amended Complaint by email through counsel, and issuance of summons is therefore unnecessary. State Farm Lloyds issued the Policy at issue.  Plaintiff initially named State Farm Fire and Casualty

Company in error.  This amendment corrects the proper issuing insurer.  All allegations in the original pleading remain unchanged.  This amendment relates back to the date of the original pleading pursuant to Federal Rule of Civil Procedure 15(c)(1)(C), as the claim arises out of the same conduct, transaction, or occurrence set out in the original complaint, and State Farm Lloyds received notice of the action and knew or should have known that, but for a mistake concerning the proper party's identity, this action would have been brought against it.

## II.
## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this action concerns real property located in Smith County, Texas, and all or a substantial part of the events giving rise to the claim described herein occurred in Smith County, Texas. The insurance policy at issue and of which Plaintiff is a beneficiary was to be performed in Smith County, Texas and the losses under the policy (including payments to be made to Plaintiff under the policy) were required to be made in Smith County, Texas.  Further, investigation, including communications to and from Defendant and Plaintiff (including telephone calls, mailings, and other communications to Plaintiff) occurred in Smith County, Texas.

## III.
## NOTICE AND CONDITIONS PRECEDENT

5.      Pre-suit notice was given on October 19, 2025, pursuant to TEX. INS. CODE § 542A.003(a). The requisite 60-day period passed under the statute before this lawsuit was filed.

6.    All other conditions precedent to suit or payment under the insurance policy at issue in this lawsuit have been satisfied by Plaintiff, excused, or waived by Defendant, or Plaintiff is excused from performance due to Defendant's prior breach of the policy. Defendant has not been prejudiced by Plaintiff's actions, inactions, or delays, if any. Any failures by Plaintiff to satisfy any conditions precedent have not prejudiced the Defendant in this case.

**IV.**
**FACTUAL BACKGROUND AND THE ACTS AND OMISSIONS GIVING RISE TO PLAINTIFF'S CLAIMS**

### A.  The Property and The Policy

7.    Luke owns certain real property with improvements at 116 West Erwin Street in Tyler, Texas (the "Property"). At all relevant times, the Property was insured under a commercial policy issued by Defendant State Farm (the "Policy"). The Property is a historic commercial building. The building's built-up roofing assembly is a low-slope system consisting of approximately two inches of polyisocyanurate insulation installed over a wood deck, topped with a base sheet and cap sheet membrane.



8.    Luke has owned the Property since 2015. Upon information and belief, Luke has been insured by State Farm Lloyds for years, with the latest renewal being policy number 93ECD3429.

The Policy provides "all risk" coverage for accidental direct physical loss unless the loss is specifically excluded or limited.

9.      It is customary for insurers to perform underwriting inspections to determine the condition and insurability of a property at the time of issuance.  Plaintiff believes State Farm performed such an underwriting inspection to determine the condition and insurability of the Property, creating a Risk Management Underwriting Report.  Underwriting inspections include an assessment of the condition of the property, including the roof.  But regardless of whether an inspection was conducted prior to issuing the initial policy years ago or in the years since, State Farm certainly had the opportunity to conduct annual inspections and decline or modify coverage if it had any concerns regarding the condition of the roofing system.  The Business Owners Coverage Form within the Policy provides 'all risk' coverage, offering comprehensive coverage for any "accidental direct physical loss" from weather-related perils unless the loss is specifically excluded or limited.

### B.  The February 11, 2024 Hailstorm and Resulting Damage

10.      A significant wind and hailstorm struck Tyler, Texas on February 11, 2024 (the "Hailstorm"). The Hailstorm produced damaging hail in the Tyler area, including hail up to approximately two inches in diameter. Objective weather data and hail reporting services corroborate the severity and proximity of the Hailstorm to the Property.

11.      A Hailtrace report (excerpt below) substantiated the degree of damaging hail from the Hailstorm, which was corroborated by historical weather data from the National Oceanic and Atmospheric Administration (NOAA):

| Date | Event Type | Meteorologist Duration | Meteorologist Magnitude | Algorithm Magnitude |
|---|---|---|---|---|
| June 8, 2025 | Wind | -- | 73 mph | -- |
| June 3, 2024 | Wind | -- | 73 mph | -- |
| June 2, 2024 | Hail | -- | -- | 0.75 in |
| May 28, 2024 | Wind | -- | 73 mph | -- |
| February 11, 2024 | Hail | 5 min | 1.25 in | 0.75 in |

Texas Hail Reports on February 11, 2024:[1]

### Texas

| Local Time | Report Details |
|---|---|
| 6:49 AM CST | Golf Ball sized hail reported near Tyler, TX, 73.7 miles NNW of Lufkin, TX, golf ball size hail northeast of bullard. |
| 6:49 AM CST | Golf Ball sized hail reported near Tyler, TX, 74 miles NNW of Lufkin, TX, golf ball sized hail in noonday. |
| 6:50 AM CST | Ping Pong Ball sized hail reported near Bullard, TX, 70.6 miles NW of Lufkin, TX |
| 6:51 AM CST | Ping Pong Ball sized hail reported near Tyler, TX, 73.9 miles NNW of Lufkin, TX, ping pong ball sized hail reported at west grand blvd and old jacksonville hwy. |
| 6:53 AM CST | Hen Egg sized hail reported near Tyler, TX, 76 miles NNW of Lufkin, TX, hail to near egg size at county road 155 and loop 323. |
| 6:57 AM CST | Quarter sized hail reported near Tyler, TX, 74 miles NNW of Lufkin, TX, report from mping: quarter (1.00 in.). |
| 6:57 AM CST | Baseball sized hail reported near Tyler, TX, 74 miles NNW of Lufkin, TX, report of baseball size hail with cars damaged along 155 and loop 49. |
| 6:58 AM CST | Ping Pong Ball sized hail reported near Tyler, TX, 73.8 miles NNW of Lufkin, TX, report from mping: ping pong ball (1.50 in.). |
| 6:58 AM CST | Half Dollar sized hail reported near Tyler, TX, 74.9 miles NNW of Lufkin, TX, report from mping: half dollar (1.25 in.). |
| 7:00 AM CST | Ping Pong Ball sized hail reported near Tyler, TX, 76.2 miles NNW of Lufkin, TX, widespread 1.5 inch sized hail across all of south tyler attm. |
| 7:09 AM CST | Ping Pong Ball sized hail reported near Tyler, TX, 72 miles NNW of Lufkin, TX, report relayed to us with a picture. |
| 7:24 AM CST | Golf Ball sized hail reported near Tyler, TX, 75.5 miles NNW of Lufkin, TX, report from ham operator. |

---

[1] https://www.interactivehailmaps.com/hail-map/february-11-2024/
https://www.hailpoint.com/32106/details/hail-map/Tyler--TX-February-11-2024.html



12.     Severe hail events pose a significant threat to commercial roofing systems, particularly in hail-prone regions like Texas. Impacts from hailstones can compromise the integrity of the roof covering, underlayment, and structural components. Photos and videos of the hail impacting the Tyler, Texas area were recorded by the local news media and are available for viewing by clicking the links below:

https://www.ketk.com/news/local-news/watch-east-texas-hit-by-hail-during-severe-weather/

https://www.kltv.com/2024/02/11/storms-pelt-parts-east-texas-with-large-hail-overnight/

https://www.ketk.com/news/local-news/hail-damage-repair-pop-up-businesses-appearing-across-tyler/

13.     The TORRO Hail Storm Intensity Scale (H0 to H10) in relation to typical damage and hail size codes attributes 40 – 65 mm sized hail (51-60 mm/2 inch) as H5-H6 category with risk of severe damage to roofs, bodywork of grounded aircraft dented, brick walls pitted and serious physical injury.[2]  The longer a hailstorm lasts, the more significant the damage. Extended exposure to repeated impacts compounds the stress on roofing materials, accelerating their degradation.

---

[2] https://www.torro.org.uk/research/hail/hscale

14.     As a result of the Hailstorm, the Property sustained direct physical loss. The roof system suffered widespread impacts and associated damage, including damage affecting the roof's ability to perform its intended waterproofing function. The Hailstorm also caused impacts and damage to rooftop components, including HVAC-related components. Prior to the Hailstorm, the roof system was performing as intended.

### C.  The Claim and State Farm's Failures to Properly Handle The Claim

15.     Luke's owner, Martin Heines, retained Stonewater Roofing, Ltd. ("Stonewater") around October 2024 to inspect the condition of the building's roof after a few interior leaks began to appear for the first time.  Stonewater is a family-owned and operated roofing company in Tyler, Longview, and Bedford, Texas. They have an A+ rating with Better Business Bureau and are a member of the Tyler Area Chamber of Commerce. Stonewater is qualified as a Master Elite Contractor and is partners with multiple roofing industry associations. Most of Stonewater's technicians are experienced roofing contractors who have been in the roofing industry for many years. Stonewater specializes in evaluating storm damage to commercial roof systems on commercial buildings, and providing detailed repair scopes and estimates for the scope of loss identified.

16.     After Stonewater confirmed the severity of the recent hailstorm damage, Luke promptly reported the claim to State Farm requesting payment for damages to the Property covered by the Policy (the "Claim").

17.     Despite the damages suffered by Luke because of the Hailstorm, Plaintiff felt fortunate to be protected by the insurance coverage procured from State Farm to protect itself from catastrophes such as the Hailstorm.  Yet, without having a single adjuster inspect the loss, State Farm internally recognized the potential extent of covered losses from a hail event of this magnitude.  As such, the

adjuster almost immediately elected to retain Donan Forensic Engineering ("Donan") to evaluate the roofing system.  Donan is widely recognized as an engineering firm that routinely performs work on behalf of insurance carriers and maintains substantial financial ties to the industry.  It is well-known that firms like Donan often deliver findings that align with the interests of the insurers who compensate them.  This inherent conflict of interest is not hypothetical.  In *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997), the Texas Supreme Court addressed the very issue of biased engineering reports *procured by State Farm* in the context of bad faith claims handling. In that case, the Supreme Court held that an insurer cannot blindly rely on a report from HAAG Engineering—another firm notorious for its insurance-friendly conclusions—when it knows, or should know, that the report is biased. The Court emphasized that the engineer's reports in *Nicolau* were not objectively prepared, that the insurer was aware of this lack of objectivity, and that its reliance on those reports was merely pretextual. *Id.*

18.     The same concerns apply here.  Donan has a documented pattern of producing reports favorable to insurers—often downplaying or denying the extent of storm-related damage. These reports provide a convenient justification for insurers to delay, deny, or underpay legitimate claims, all under the guise of "independent" expert analysis. The use of such engineering firms is not merely negligent—it is part of a broader strategy to create the illusion of due diligence while systematically depriving policyholders of the benefits owed under their policies.

19.     Christopher Curry, P.E. with Donan inspected Plaintiff's roof as requested by State Farm's claim specialist, Shaymon Curry.  Critically, State Farm provided Donan a date of loss that was not the February 11, 2024 Hailstorm. Instead, State Farm provided Donan a later June 2, 2024 date of loss with significantly smaller hail reports—weather data that did not actually reflect the

Hailstorm that impacted the Property. State Farm and/or its agents falsely claimed that this incorrect date of loss was provided by Plaintiff.

20.    Relying on incorrect weather data, Donan minimized and mischaracterized the storm-related impacts observed at the Property. Donan's original report dated December 16, 2024 has never been provided to Plaintiff or its counsel, despite a formal written request. Donan later issued a supplemental report dated January 10, 2025, which attempted to address deficiencies in the original report that were premised on incorrect weather data. Even in the supplemental report, Donan acknowledged that observed dents were consistent with hail impacts, yet still attempted to dismiss the hail impacts as "cosmetic" and not reducing "functionality," despite the Policy containing no "cosmetic damage" exclusion and despite the obvious storm-driven impacts affecting a weatherproofing system designed to prevent water intrusion:

> At your request, on December 16, 2024, a study was made on the building at the above-referenced address.  The purpose of the study was to determine whether the roof is wind or hail damaged.  A report of Donan's findings was issued on December 26, 2024, under Donan Order Number 24-12480352.  The purpose of this supplemental letter is to provide additional weather data, including an additional hail swath map from a hailstorm on February 11, 2024, and to determine whether the metal appurtenances are damaged by hail.
>
> **Observations**
>
> As described in the original report, round dents with inner diameters up to $^1/_2$ inch are in one ten-foot section of downspout on the roof, and round dents with inner diameters up to $^3/_4$ inch are in the metal exhaust vents on the roof.  Additionally, hail-caused dents were also noted on the fins of the rooftop air conditioning condensing units.  No splits, punctures, or coating displacement are associated with these dents.  These dents are consistent with hail impacts.
>
> **Conclusions**
>
> The dents in the metal appurtenances have not reduced the functionality of these components and are cosmetic.  The dents in the rooftop air conditioning unit's cooling fins can be straightened or combed out.
>
> No information is presented herein which warrants a change to the original report conclusions.  The conclusions of Donan's original report remain unchanged.

21.     Defendant's reliance on Donan's representations, while knowing the improper standard of damage Donan applied, is evidence of its pre-determined approach towards handling the Claim. Instead of clarifying Donan's incorrect standard, Defendant later embraced and relied on both Donan reports and findings with full knowledge of its misrepresentations regarding the damages at the Property as a result of the Hailstorm.

22.     State Farm also initiated an HVAC inspection using the same incorrect June 2, 2024 date of loss rather than the February 11, 2024 storm data reflecting far larger hail. An onsite report was provided by HVACi. HVACi determined the cause of loss to one system was hail and proposed a minimal "comb/straighten" measure, while concluding other systems were operating properly. This narrow, component-by-component framing ignored the overall storm-driven impacts to the Property's roof assembly and waterproofing system.

23.     On January 21, 2025, Timothy Jones ("Jones"), Claims Specialist with State Farm rendered a final coverage decision noting the incorrect date of loss of June 2, 2024.  Relying on Donan's flawed and biased investigation, Jones denied coverage by attributing storm impacts to "wear, tear and deterioration" and by invoking exclusions in a manner that failed to reasonably explain how the cited exclusions applied to the observed hail impacts and resulting damage.  Of course, wear and tear is not a peril but a condition of any roof that is not brand new.  Donan's acknowledgement there were various locations with documented hail highlights the absurdity of Defendant's coverage position that all the damage was *caused by* wear and tear.  State Farm not only improperly concluded that Luke's damages were "not a covered loss under the Policy," but further misrepresented that the following exclusions applied:

**SECTION I — COVERED CAUSES OF LOSS**
We insure for accidental direct physical loss to Covered Property unless the loss is:

1.  Excluded in **SECTION I — EXCLUSIONS**; or

2.  Limited in the **Property Subject To Limitations** provision.

**SECTION I — EXCLUSIONS**

2.  We do not insure under any coverage for loss whether consisting of, or directly and immediately caused by, one or more of the following:

   **l.  Other Types Of Loss**
   **(1)** Wear and tear;
   **(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
   **(4)** Settling, cracking, shrinking or expansion;

3.  We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in Paragraphs **1.** and **2.** immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   **a.  Weather Conditions**
   Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** and **2.** above to produce the loss.
   **c.  Work**
   Faulty, inadequate or defective:
   **(1)** Planning, zoning, development, surveying, siting;
   **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   **(3)** Materials used in repair, construction, renovation or remodeling; or
   **(4)** Maintenance;
   of part or all of any property (including land, structures or improvement of any kind) on or off the described premises.

But if accidental direct physical loss results from items **3.a.**, **3.b.**, or **3.c.**, we will pay for that resulting loss unless the resulting loss is itself one of the losses not insured in **SECTION I** of this coverage form.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in an accidental direct physical loss by any of the "specified causes of loss" or by building glass breakage, we will pay for the loss caused by that "specified cause of loss" or by building glass breakage.

This Company does not intend by this letter to waive any policy defenses in addition to those stated above and reserves its right to assert such additional policy defenses at any time.

24.     The very next day, on January 22, 2025, Jones sent an additional disposition letter—again referencing the incorrect June 2, 2024 date of loss—asserting that the amount of loss did not exceed Luke's $10,000 deductible:

RE:     Claim Number:       43-76V7-52Q
        Date of Incident:   June 2, 2024
        Policy Number:      93ECD3429
        Insured:            Luke & Elle Llc

To Whom It May Concern:

Thank you for the opportunity to review your CMP 4100 Business Coverage claim. We have completed our evaluation of your claim and have determined your loss does not exceed your $10,000.00 deductible. Therefore, we are unable to make a payment on this claim.

If you have questions or need assistance, call us at (844) 458-4300 Ext. 3099943527.

Sincerely,


Timothy Jones
Claim Specialist

25.     State Farm never provided any estimate, scope, or documentation supporting either position. State Farm's back-to-back, inconsistent dispositions—first "not covered," then "below deductible"—and the complete absence of any quantification prevented Luke from verifying what, if any, damage State Farm accepted as covered versus what it attempted to exclude.

26.     State Farm's handling of Luke's Claim is particularly unreasonable in light of comparable losses from the same Hailstorm in the immediate area. Indeed, the same adjuster (Jones) investigated another commercial building loss from the Hailstorm insured by State Farm that happened to also be owned by one of Plaintiff's individual owners—which was located *within two blocks* of the Property at 221 S. Broadway Ave.  State Farm agreed to a full roof replacement on that claim due to the Hailstorm. Yet State Farm denied and minimized Luke's Claim based on an incorrect date of loss and opaque, unsupported dispositions.  Luke's representatives are also aware of other nearby commercial buildings getting roofs bought by other carriers stemming from the Hailstorm.  State Farm's conduct in adjusting the Claim was far more than an oversight or error— it reflected a deliberate, outcome-driven process designed to protect the carrier's bottom line at the

insured's expense. By undervaluing obvious hail damage, ignoring comparable claims on neighboring commercial properties, and providing no real breakdown of covered versus uncovered losses, State Farm deprived Luke of the very protection it paid annually to secure. This conduct not only demonstrates carelessness and bias but also constitutes a breach of the duty of good faith and fair dealing. It evidences unfair settlement practices and a constructive denial of coverage, in direct violation of the Texas Insurance Code. State Farm's actions revealed a systemic pattern of deception and denial—conduct carried out with malice and reckless disregard for Luke's contractual and statutory rights, instead focusing on profits and State Farm's bottom line.

### D.  **Plaintiff's Competing Evidence Confirms Widespread Storm Damage and the Need for Replacement**

27.     Because State Farm did not conduct a reasonable investigation and did not provide a transparent, supportable scope or estimate, Luke was forced to retain BR Architects & Engineers ("BRAE") to perform a forensic review of the roof system with respect to the Hailstorm.  On June 20, 2025, BRAE conducted a comprehensive visual inspection of the roof assembly and documented widespread storm impacts, including bruising, punctures, granule loss, cracking, and displacement consistent with hail-driven damage to a cap sheet membrane system. In their report, BRAE documented moisture-related impacts and loss of performance integrity in the roof assembly and concluded the roof had reached the end of its serviceable life and required full replacement to restore reliable waterproofing and performance:



28.    It was State Farm's responsibility, not Plaintiff's, to conduct a reasonable and thorough investigation of the Claim to determine the specific cause of the loss and the amount of loss. Although State Farm and its agents are required by Texas law and the Policy to conduct a reasonable and thorough investigation of the Claim, they failed to do so.  Rather, State Farm chose to deny the claim after employing an engineering firm with a known financial bias towards carriers to support a denial.

29.    Given the severity of the Hailstorm and the overwhelming objective data confirming the size and proximity of the hail impacts, there can be no reasonable dispute that the Property was directly affected. Furthermore, Defendant has indirectly admitted that another nearby property it

insured sustained enough hail damage from the Hailstorm to necessitate its complete removal and replacement. State Farm paid that claim, thus demonstrating the patterned denials and cookie cutter exclusions of State Farm's practices and improper handling of this Claim. The ample onsite evidence left no doubt as to the cause and the extent of the damage, leaving only the straightforward application of coverage under the Policy. Despite this, State Farm failed to honor its contractual obligations, necessitating this demand for proper claim handling and payment of all benefits owed.

30.    Luke presented a claim under the Policy. It was State Farm's responsibility, not Luke's, to investigate the Claim to determine the specific cause and amount of the loss. Although State Farm and its agents are required by Texas law and the Policy to conduct a reasonable and thorough investigation of the Claim, they failed to do so. Instead, State Farm chose to minimize the obvious evidence of hail and categorize all the hail damage as "wear and tear" in an obvious effort to support State Farm's eventual denial of the Claim, as opposed to fairly compensating Luke for their damages covered by the Policy.

31.    State Farm's improper handling of the Claim subjects State Farm, its adjusters and representatives to liability pursuant to TEX. INS. CODE § 541.001, *et seq.* and TEX. INS. CODE § 542.051, *et seq.* Specifically, State Farm violated TEX. INS. CODE § 541.060(a) and engaged in Unfair Settlement Practices by:

> a)    **Misrepresenting material facts or policy provisions relating to the coverage at issue.** Rather than fully compensate Luke for its losses, State Farm failed to adequately assess damage to the Property and deliberately altered the reported date of loss. The "cause" of damage supposedly from wear, tear, and deterioration are conditions of a roof, not an excluded peril. Moreover, State Farm undervalued the damages less than the deductible, when the actual costs for damaged the Property were significantly higher. Rather than fully compensate Luke for their losses, State Farm failed to adequately assess damages, and as a result grossly undervalued the amount of Plaintiff's covered losses. Furthermore, by significantly undervaluing the Claim, State Farm represented that much of the damage caused to the Property

was either not covered by the Policy or reflects a deliberate disregard for the obvious damages.

b) **Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though State Farm's liability under the Policy was reasonably clear.** State Farm ignored the obvious substantial amount of recent hail damage to the Property, conducting a substandard investigation by retaining a biased engineer which suggests a cursory, outcome driven investigation. Luke has been stymied by its insurance carrier who happily accepted its substantial premium payment in exchange for an illusory promise to provide coverage to the Property for several years.

c) **Failing to promptly provide Luke with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law for State Farm's liability under the Policy was reasonably clear.** Luke is unclear how the significant damage to the Property would not be covered under the terms of the Policy and State Farm's explanation was non-sensical. State Farm's initial determination letter was erroneously based on exclusions cited in the Policy. It is impossible to verify how the adjuster separated wear/tear vs. covered hail damage on the Property in the January 21, 2025 decision letter—indeed, there was no explanation to Luke of how the exclusions allegedly applied, much less a "reasonable" one. State Farm's second decision letter dated January 22, 2025 provided no explanation of how the damage valuation was calculated to fall below the deductible, impossible since no estimate, scope or documentation supporting that conclusion was ever provided. A conclusory "below deductible" determination—without transparent quantification—shows the investigation was outcome-driven. All the while, State Farm still refuses to tender hundreds of thousands of dollars in obvious, covered losses under the Policy, citing vague and completely irrelevant exclusions within the Policy within its disposition letters.

d) **Refusing to pay Luke's Claim without conducting a reasonable investigation with respect to the Claim**. State Farm's investigation was clearly unreasonable because it failed to determine the full amount of Plaintiff's damages, even though the damages were obvious and the true amount of cost to repair the damages was readily ascertainable. Indeed, State Farm's determination was based solely on their biased engineering report. Further, setting aside third-parties, the adjuster failed to conduct any forensic testing and or moisture readings. A carrier must reasonably investigate all bases of coverage. Had State Farm conducted a reasonable and thorough investigation of the Claim, they would have determined the actual amount of Plaintiff's covered losses. It was State Farm's responsibility, not Plaintiff's, to conduct a reasonable and thorough investigation of the Claim to determine the specific cause and severity of the claimed loss. Instead, turning their own obligation on its head, State Farm was apparently content to force Luke to prove the cause of their damage and also put the burden on Luke to determine (at its own expense) its own scope of loss—yet, an insured has no obligation under Texas law,

the Policy or any insurance carrier's claim handling guidelines in the State of Texas to do so.

32.     State Farm took advantage of Plaintiff's lack of knowledge, ability, experience or capacity to a grossly unfair degree and to Plaintiff's detriment. State Farm's acts also resulted in a gross disparity between the value received and the consideration paid in a transaction involving the transfer of consideration.  As a result of State Farm's violations, Plaintiff suffered actual damages. In addition, State Farm committed the above acts knowingly and/or intentionally, entitling Plaintiff to three times its damages for economic relief.

33.     Further, State Farm violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, *et seq.* by delaying payment of the Claim following State Farm's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE § 542.058.  State Farm has always had full access to the Property and plenty of opportunity to properly investigate the Claim and determine the actual amount of damages caused by the Hailstorm.  As a domestic carrier, State Farm had no more than 45 days after receiving notice of the claim from Luke to make full payment for the Claim.  Regardless of the timing of when the Claim was made, since they denied the Claim on January 21, 2025, State Farm owes statutory interest and attorney's fees since it has delayed payment of a claim for which it is liable well beyond the applicable statutory period.  TEX. INS. CODE §§ 542.058 and 542.059.  "To prevail on a TPPCA claim for damages and interest, an insured must demonstrate the insurer's (1) liability under the policy, and (2) failure to comply with the TPPCA." *Advanced Indicator & Mfg., Inc. v. Acadia Ins.*, 50 F.4th 469, 477 (5th Cir. 2022) (per curiam). In other words, the insured must show only "that the requisite time has passed and the insurer was ultimately found liable for the claim." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 861 (5th Cir. 2003) (per curiam) (interpreting a prior version of the statute, now recodified without modification as Chapter

542). "A wrongful rejection of a claim, if reduced to judgment, can be considered a delay in payment under the TPPCA." *Advanced Indicator*, 50 F.4th at 477.

34.     Plaintiff has fulfilled all duties required of it pursuant to the terms of the Policy.

35.     In summary, State Farm failed to comply with the Policy, the Texas Insurance Code, and Texas Law in handling the Claim, and has failed to pay all amounts due and owing under the Policy for the Claim. State Farm and its representatives failed to perform a thorough investigation of Plaintiff's claim, failed to employ appropriate or qualified consultants to evaluate the damages, delayed resolution of the claim under Texas law, and misrepresented applicable scopes of damages and exclusions, as well as the terms of the Policy. Adjusters employed by State Farm violated the law through their own acts and omissions in the handling of the Claim. Because of these violations of law and wrongful conduct, Plaintiff has sustained and continues to sustain significant damages, including but not limited to property damage, diminution of property value, attorney's fees, financial harm, and other consequential damages. Accordingly, Plaintiff requests payment for damages to the Property pursuant to the terms and conditions of the Policy. Plaintiff also requests payment for its attorneys' fees to date.

   **E.   Defendant completely ignores Plaintiff's efforts to resolve the Claim amicably prior to litigation**

36.     On June 1, 2017, Governor Abbott signed House Bill 1774 into law as Section 542A of the Texas Insurance Code.  This new law was sponsored by approximately sixty state representatives and senators and contains important consumer protections against a variety of unscrupulous practices.  Section 542A.003 in particular requires detailed, comprehensive pre-suit notice that is intended to make the claims and litigation processes more transparent and potentially even avoid unnecessary lawsuits.  Upon receiving notice, an insurer has a right to conduct an inspection, and

even make an offer to avoid litigation.  When utilized properly, Section 542A should assist insureds like Plaintiff to avoid protracted litigation over a clear claim.

37.     In compliance with Section 542A.003, Plaintiff sent a detailed pre-suit notice letter with supporting exhibits on October 19, 2025 (the "Notice Letter"). The Notice Letter provided a 18-page single-spaced comprehensive outline of Plaintiff's claims and damages, and quantified Plaintiff's losses by presenting expert reports and photos on the Property.  Stonewater determined through Xactimate that the covered replacement cost to properly and permanently repair the covered damages to the Property was at least $239,948.00. Plaintiff also offered to take a substantial discount to avoid protracted litigation.

38.     State Farm did not provide the documents requested in the notice letter and continues to withhold the most significant documents it purportedly relied upon to adjust the Claim—most notably, Donan's original report dated December 16, 2024. Despite Plaintiff's submission of competing evidence and quantified damages, State Farm refused to reconsider the conclusions reached during its one-sided investigation and compelled Plaintiff to file this lawsuit.

F.    **Independent Injuries and Benefits-Lost from State Farm's Conduct**

39.     In addition to policy benefits owed, State Farm's delay and other unconscionable actions have potentially led to additional uncovered losses that either qualify as an "independent injury" or result from State Farm's actions, and thus are still owed under the "Benefits-Lost Rule" grounded in Texas common law. As merely one example, Plaintiff's cost of entering into a contract with Stonewater and incurring engineering costs for BRAE's report would ordinarily not be covered under the Policy but were necessitated by State Farm's conduct outlined herein. Because State Farm's statutory violations noted above have prejudiced their insured, State Farm is also estopped from denying any benefits that would otherwise be payable under the Policy as if the risk

had been covered. Should State Farm subsequently deny any portion of the loss based on limitations within the Policy (to be clear, which Plaintiff does not believe will legally apply, given the timing of the adjustment of this loss and denial of this Claim, both of which prevented Plaintiff from timely completing repairs), Plaintiff still seeks the recovery of any damages sustained due to State Farm's actions to date even if the Policy allegedly does not cover such losses (*i.e.,* replacement cost benefits).

**V.**
**CAUSES OF ACTION**

40.     Plaintiff reincorporates and realleges each allegation in the preceding paragraphs as if fully set forth herein in support of the causes of action below.

41.     Defendant is liable to Plaintiff for breach of contract, as well as intentional violations of the Texas Insurance Code and breach of the common law duty of good faith and fair dealing.

### A.    Breach of Contract

42.      The Policy is a valid, binding, and enforceable contract between Plaintiff and Defendant. Defendant breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Texas law. Defendant's breach proximately caused Plaintiff injuries and damages. All conditions precedent required under the Policy have been performed, excused, waived, or otherwise satisfied by Plaintiff and Defendant is estopped from raising the issue due to Defendant's prior breach of the insurance contract or, Plaintiff is excused from performance due to Defendant's prior breach of the policy.

34.     Due to State Farm's breach of the contract terms and continual denial of the claim, Plaintiff continues to sustain damages to its Property.

**B.    Noncompliance With Texas Insurance Code: Unfair Settlement Practices**

43.    The conduct, acts, and/or omissions by Defendant constituted Unfair Settlement Practices pursuant to TEX. INS. CODE § 541.060(a). All violations under this article are made actionable by TEX. INS. CODE § 541.151.

44.    Defendant's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(1). Such conduct includes, but is not limited to:

- Providing Donan (and other claim vendors) an incorrect date of loss (June 2, 2024) rather than the actual February 11, 2024 Hailstorm, and falsely attributing the incorrect date to Plaintiff;
- Treating and communicating "functional damage" and/or "cosmetic only" concepts as claim-dispositive despite the Policy containing no cosmetic-damage exclusion and providing coverage for accidental direct physical loss;
- Attributing storm-related impacts and damage to "wear, tear, and deterioration" as a basis to deny coverage, despite the presence of hail-consistent impacts and resulting damage documented at the Property; and
- Representing that the loss fell below the deductible while withholding any estimate, scope, or calculation supporting that representation.

45.    Defendant's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Defendant's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(2)(A).  Such conduct includes, but is not limited to, issuing an outcome-driven denial and then an inconsistent "below deductible" disposition without providing any estimate or transparent basis for either position; disregarding and refusing to meaningfully respond to Plaintiff's competing evidence, including BRAE's findings and Stonewater's quantified replacement cost supported by Xactimate; and refusing to tender covered benefits despite objective

storm data, observed hail impacts, and documented performance-compromising roof damage requiring replacement.

46. Defendant's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(3). Such conduct includes, but is not limited to, issuing opaque disposition letters that did not provide a reasonable, claim-specific explanation reconciling observed hail impacts and resulting damage with the exclusions cited; and asserting "below deductible" without providing any estimate, scope, valuation methodology, or covered-versus-excluded breakdown enabling Plaintiff to verify the basis for Defendant's position.

47. Defendant's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance, including by delaying acceptance and payment of covered benefits and instead issuing unsupported, inconsistent dispositions built on incorrect loss information and incomplete investigation steps. TEX. INS. CODE § 541.060(a)(4).

48. Defendant's unfair settlement practice, as described above, of refusing to pay Plaintiff's Claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(7). Such conduct includes, but is not limited to, building the investigation on an incorrect date of loss and associated weather data that did not reflect the storm that impacted the Property; failing to conduct reasonable, claim-appropriate investigative steps necessary to

determine the full scope and cost of storm-related damage to a commercial low-slope roofing system, including moisture assessment where warranted; relying on biased and unsupported conclusions while withholding key documents (including Donan's original report dated December 16, 2024) purportedly supporting Defendant's disposition; and refusing to reevaluate the Claim after receiving Plaintiff's expert findings, documentation, and quantified damages.

49.     Defendant's conduct described above compelled Plaintiff to initiate a lawsuit to recover amounts due under its policy by offering substantially less than the amount ultimately recovered. Defendant refused to even offer more than its own grossly undervalued estimates despite actual damages, which were much greater. This continued failure compelled Plaintiff to file suit. TEX. INS. CODE § 542.003(5).

50.     Defendant misrepresented the Policy under which it affords property coverage to Plaintiff, by making an untrue statement of material fact. TEX. INS. CODE § 541.061(1).

51.     Defendant misrepresented the insurance policy under which it affords property coverage to Plaintiff by failing to state a material fact that is necessary to make other statements made not misleading. TEX. INS. CODE § 541.061(2).

52.     Defendant misrepresented the insurance policy under which it affords property coverage to Plaintiff by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material fact and failing to disclose a matter required by law to be disclosed, TEX. INS. CODE § 541.061(3).

53.     Defendant knowingly committed the foregoing acts, with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices, in violation of TEX. INS. CODE § 541.002(1).

54.     Defendant's unfair settlement practices were a producing cause of Plaintiff's actual damages, including policy benefits wrongfully withheld or underpaid, out-of-pocket costs incurred to investigate and document the loss due to Defendant's claim-handling failures, loss of use and/or loss of value, consequential damages resulting from delay and underpayment, reasonable and necessary attorneys' fees, and other damages allowed by law.

### C.     Prompt Payment of Claims Violations

55.     The Claim is a claim under an insurance policy with Defendant of which Plaintiff gave Defendant notice. Defendant is liable for the Claim. Defendant violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, *et seq.* by:

a)     Failing to acknowledge receipt of the Claim, commence investigation of the Claim, and/or request from Plaintiff all items, statements, and forms that Defendant reasonably believed would be required within the time constraints provided by TEX. INS. CODE § 542.055. Specifically, Defendant failed to commence a proper investigation of the Claim and failed to request the documents and other forms it required to properly adjust Plaintiff's Claim within a reasonable time and manner;

b)     Failing to notify Plaintiff in writing of its acceptance or rejection of the Claim within the applicable time constraints provided by TEX. INS. CODE § 542.056. Defendant failed to provide Plaintiff with a proper explanation of their Claim decision. Defendant delayed resolution of the Claim without a proper explanation for their delay, and then relied on improper Policy exclusions in the denial of Plaintiff's Claim without a proper explanation for their reasoning behind their denial; and/or by

c)     Delaying payment of the Claim following Defendant's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE § 542.058. To date, Defendant has refused to pay the full amount owed under the Policy for the Claim. Defendant continues to delay full resolution of the Claim by refusing to properly adjust Plaintiff's Claim.

56.     Defendant's violations of these prompt payment of claims provisions of the Texas Insurance Code are made actionable by TEX. INS. CODE § 542.060.

### D.  Breach of the Duty of Good Faith and Fair Dealing

57.     The Texas Supreme Court has recognized a "duty on the part of insurers to deal fairly and in good faith with their insureds.  That duty emanates not from the terms of the insurance contract, but from an obligation imposed in law 'as a result of a special relationship between the parties governed or created by a contract.'" *Viles v. Security Nat. Ins. Co.*, 788 SW 2d 566, 567 (Tex. 1990) (citing *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165 (Tex. 1987)). Therefore, an insured can institute a cause of action against its insurer for breach of the duty of good faith and fair dealing.

58.     Defendant and Plaintiff are in a special relationship, created by the insurance contract, giving rise to a duty on the part of Defendant to deal fairly and in good faith with Plaintiff, who is the insured.

59.      Defendant breached its duty of good faith and fair dealing by:

   a)     Failing to provide a reasonable basis for denial or underpayment of the claim; and/or

   b)     Failing to determine whether there was a reasonable basis for denial or delay of the claim.  *Arnold*, 725 S.W.2d at 167.

60.     Specifically, Defendant denied Plaintiff's claim, misrepresenting that the damages were from "wear, tear, and deterioration."  Defendant's misrepresentation constitutes a breach of its duty of good faith and fair dealing.  As fully described above, Defendant further breached its duty of good faith and fair dealing by failing to adequately and reasonably investigate and evaluate Plaintiff's Claim, although Defendant knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear.

61.     Defendant systematically and routinely denies or underpays valid claims to the detriment of its policyholders. As set forth above, the wrongful acts and omissions Defendant committed in

this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendant with regard to handling these types of claims.

62.     By virtue of its systematic wrongful denials, Defendant compels its policyholders to seek legal representation and initiate and maintain a suit to recover an amount due under the policy by offering nothing or substantially less than the amount that will be recovered in a suit brought by the insured.

63.     Defendant either failed to adopt or implement reasonable standards for prompt investigation of claims arising under its policies or is deliberately adopting standards calculated to maximize its profit to the detriment of its policyholders. Defendant is knowingly directing its personnel, agents and/or adjusters to undervalue or underpay valid claims.

64.     Defendant knowingly committed the act of denying and/or underpaying claims without a reasonable basis; therefore, Plaintiff is entitled to actual and exemplary damages at law.

## VI.
## DAMAGES

65.     For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's Claim to restore the Property to its pre-loss condition, together with reasonable and necessary attorneys' fees.

66.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiff asks for three times Plaintiff's actual damages. TEX. INS. CODE § 541.152.

67.     For noncompliance with Texas' Prompt Payment of Claims Act, Plaintiff is entitled to the amount of Plaintiff's claim, penalty interest per annum (calculated by adding five (5) percent to the current interest rate as determined by the Board of Governors of the Federal Reserve

System) of the amount of Plaintiff's claim as damages, together with attorney's fees.  TEX. INS. CODE § 542.060.

68.      For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

69.      For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firm whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Fifth Circuit and/or the Supreme Court.

## VII.
## ATTORNEYS' FEES

70.      For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firm whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Fifth Circuit and/or the Supreme Court.

71.      Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because it is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

72.      Plaintiff further prays that it be awarded all reasonable attorney's fees incurred in prosecuting its causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## VIII.
## PRE-AND-POST JUDGMENT INTEREST SOUGHT

73.    Plaintiff further seeks the recovery of all interest allowed at law, including pre-judgment and post-judgment interest.

## XI.
## JURY DEMAND

74.    Plaintiff previously requested a jury trial.

### PRAYER

In summary, Defendant failed to comply with the Texas Insurance Code and Texas Law in handling the Claim, and has failed to pay all amounts due and owing under the Policy for the Claim.  Defendant failed to perform a thorough investigation of Plaintiff's Claim, failed to employ appropriate or qualified consultants to evaluate the damages, delayed resolution of the Claim under Texas law, and misrepresented applicable scopes of damages as well as the terms of the Policy. Because of these violations of law and wrongful conduct, Plaintiff sustained and continues to sustain significant damages, including but not limited to property damage, diminution of property value, attorneys' fees, financial harm, and other consequential damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, Plaintiff has and recovers such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, both as to actual damages, statutory penalties and interest, treble damages under the Texas Insurance Code and all punitive and exemplary damages as may be found.  In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for pre-judgment and post- judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**LUNDQUIST LAW FIRM**

*/s/ William W. Lundquist*
William W. Lundquist
Texas Bar No.: 24041369
675 Bering Dr., Ste. 850
Houston, Texas 77057
Will@LundquistLawFirm.com
Telephone: (346) 704-5295
Facsimile: (713) 583-5586

ATTORNEY-IN-CHARGE FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2026, I electronically filed the foregoing document with the clerk of the Court using the CM/ECF system.  No counsel of record has appeared for defendant as of the date of this filing.

*/s/ William W. Lundquist*
William W. Lundquist